**SO ORDERED.**

**DONE and SIGNED May 15, 2017.**



_____
**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Marlea Adley Briggs | § | Case Number: 16-12298 |
| | § | |
| Debtor | § | Judge Jeffrey P. Norman |

### ORDER DENYING CONFIRMATION

This matter is before the Court concerning the confirmation of the debtor's amended Chapter 13 plan (ECF No. 15). A confirmation hearing was held on April 19, 2017. After considering the pleadings, evidence, testimony, arguments, and briefs, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.2. To the extent any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the

1

right to make any additional findings and conclusions as may be necessary or as requested by any party. The Court also reserves the right to supplement the findings of fact and conclusions of law.

## PROCEDURAL BACKGROUND

The debtor, Marlea Adley Briggs, filed this Chapter 13 bankruptcy case on December 31, 2016. The most recent plan (ECF No. 15) was filed on February 21, 2017. The plan is supported by an amended budget (ECF No. 17) filed on March 14, 2017. No parties in interest objected to the plan. On March 17, 2017, a proceeding memo was entered by the Chapter 13 Trustee stating the following: "[c]onfirmation hearing not held. Plan confirmed on consent docket."

Procedures for the confirmation of Chapter 13 plans are set forth in this Court's Standing Order Adopting Mandatory Form Chapter 13 Plan Effective August 1, 2015. That Standing Order provides the following:

> Plans or plan modifications that appear to the court to meet all statutory tests for confirmation and to which no objections to confirmation have been filed may be confirmed on the consent docket without actual presentation. Cases in which plans are confirmed or modified on the consent docket may be read into the record at the confirmation hearing, may be posted on the court's or trustee's website any time prior to the scheduled confirmation hearing date, or maybe listed on the hearing docket. It is the duty of the debtor's attorney, the trustee, or parties in interest to inform the court of any existing bar to confirmation. Cases with pending objections will not be placed on a consent docket. Deficiencies in the plan noted by the trustee at the § 341 meeting must be cured in a manner which is evident upon review of the case file or the plan will not be scheduled on a consent docket.

Accordingly, unopposed Chapter 13 plans which the Chapter 13 Trustee recommends for confirmation are struck from the docket.[1] Thereafter, the Trustee uploads a confirmation order and the Court conducts an *in camera* review of the debtor's Chapter 13 plan and schedules. Given the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260 (2010), this Court has an independent duty to review all Chapter 13 plans. An important holding in that

---

[1] Hearing calendars are continually updated and available at http://www.lawb.uscourts.gov/content/judge-jeffrey-p-norman

2

case was "whether or not an objection is presently lodged in this case, the Court retains the authority to review [the Chapter 13] plan and deny confirmation if it fails to comply with the confirmation Standards of the Code." *Id*. Once the Court has conducted its review, it will sign the order confirming the Chapter 13 plan if it has no independent concerns or objections. Where it appears the confirmation standards may not have been met, the Court will typically set the case for an evidentiary hearing or may deny confirmation outright.

The Court had its own independent concerns regarding confirmation of the debtor's plan. So, after it's *in camera* review, the Court entered an order setting a hearing (ECF No. 18) which stated the following:

> Hearing is set on the debtors Chapter 13 Plan (ECF #15) at 9:30 a.m. on April 19, 2017. Pursuant to 11 U.S.C. § 1325(b)(3), the Code provides that above median income debtors are only allowed to deduct amounts reasonably necessary to be expended by applying the mathematical "abuse" test in 11 U.S.C. § 707(b)(2)(A) and (B). Under the "abuse" test, above median income debtors expenses are limited, in certain categories, to amounts set forth in the National and Local Standards. Debtor's expenses exceed the National and Local Standards in various categories. Hearing will be held to determine if the plan is confirmable pursuant to 11 USC §§ 1322 and 1325.

Thereafter, in anticipation of the hearing, the debtor filed an Amended Schedule J (ECF No. 20). This amendment included additional disclosures, but none of the debtor's previously disclosed expenses were impacted.

## FINDINGS OF FACT

The debtor is married and has a non-filing spouse. Her original schedules reflect she maintains a household of two, which consists of the debtor and her husband. However, her latest amended Schedule J reflects that her twenty-seven year old daughter, who was recently diagnosed with Crohn's disease, is temporarily living with her. The daughter moved in with the debtor just two weeks prior to the bankruptcy filing, and the debtor does not disclose her as a dependent in the bankruptcy schedules. Debtor's counsel conceded at the hearing that the correct family size

3

should be two. The Court assumes debtor's counsel does not believe the daughter's temporary living arrangements with the debtor impacts the means test calculation.

The debtor has proposed a Chapter 13 plan calling for plan payments of $310.00 per month for 52 months, and then $825.22 per month for the final eight months. While no evidence was introduced regarding the increase in the plan payment, the Court assumes the non-filing spouse's car payment for his 2012 Ford Truck ends in month 52 and those funds would become available for the higher plan payment. The debtor is above median income and her applicable commitment period[2] is 60 months; accordingly, this debtor must propose a 60 month plan. The proposed plan is a "pot" plan[3], with unsecured non-priority creditors receiving an estimated 21% of their claims. The total proposed pot is $9,500.00.

The debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period, together with the Chapter 13 Calculation of Your Disposable Income (commonly called the Chapter 13 Means Test") (ECF No. 1, pgs. 52 to 64), discloses the following: a family size of two, average monthly income for the debtor of $2,582.85, and average monthly income for the non-filing spouse of $3,445.20. The following chart compares the debtor's income and expenses in her means test and her budget:

---

[2] "Applicable commitment period" is defined in 11 U.S.C. § 1325(b)(4), and is three years for debtors below median income and five years for debtors above median income.
[3] A pot plan proposes a certain dollar amount to pay general unsecured creditors after payment of priority and secured debts. There is no stated percentage return but one is typically estimated, but general unsecured creditors receive a pro rata distribution of the pot amount based on the total amount of allowed general unsecured claims.

4

| | | Chapter 13 Means Test (Form 122C-1 and Form 122C-2) | | | Budget Schedule I and Schedule J | |
|---|---|---|---|---|---|---|
| Average Monthly Income Debtor | | $ 2,582.85 | | | $ 2,582.85 | |
| Average Monthly Income Non-Filing Spouse | | $ 3,445.20 | | | $ 3,445.20 | |
| | | | | | | |
| Total Income | | $ 6,028.05 | | | $ 6,028.05 | |
| | | | | | | |
| Income Deductions | | | | | | |
| Lines 16, 25, 41 (All references to Form I22C-2) | | $(1,304.75) | | | | |
| Lines 5a - 5h (All references to Schedule J) | | | | | $(1,368.14) | |
| | | | | | | |
| Net Income | | $ 4,723.30 | | | $ 4,659.91 | |
| | | | | | | |
| Clothing Food and other items | | | | | | |
| Line 6 | | $ 1,083.00 | | | | |
| Line 7, 9, 10, 13, 21 | | | | | $ 1,064.17 | |
| | | | | | | |
| Health Care | | | | | | |
| Line 7(g) | | $ 108.00 | | | | |
| Line 11 | | | | | $ 100.00 | |
| | | | | | | |
| Housing- Insurance and operating expenses | | | | | | |
| Line 8 | | $ 509.00 | | | | |
| Line 4b, 4c, 6a, 6b, 6d and unscheduled cell | | | | | | |
| phone purchase not scheduled in budget | | | | | | |
| Purchase (2 x $25) | | | | | $ 811.35 | |
| | | | | | | |
| Housing | | | | | | |
| Line 9(c) Court notes that line 9(c) is incorrectly calculated | | $ 913.00 | | | | |
| Line 4 | | | | | $ 438.20 | |
| | | | | | | |
| Vehicle Operation Expense | | | | | | |
| Line 12 | | $ 440.00 | | | | |
| Line 12 and 15(c) | | | | | $ 787.97 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Vehicle Ownership Expense | | | | | | |
| Line 13(a)/Line 33b | | | $ 471.00 | | $ 515.22 | |
| Line 13(d)/Line 33c | | | $ 471.00 | | Paid in Plan | |
| | | | | | | |
| Life Insurance | | | | | | |
| Line 18 | | | $ 15.84 | | | |
| Line 15(a) | | | | | $ 83.00 | |
| | | | | | | |
| Optional telephone and telephone services^ | | | $ 50.00 | | Not scheduled | |
| | | | | | | |
| Charitable Contributions | | | | | | |
| Line 31 | | | $ 602.81 | | | |
| Line 14 | | | | | $ 600.00 | |
| | | | | | | |
| Trustee Fee (Line 36) | | | $ 22.32 | | Paid in Chapter 13 Plan | |
| | | | | | | |
| Total Schedule I Deductions | | | $ 4,685.97 | | $ 4,399.91 < | |
| Total Payroll Deductions | | | $ 1,304.75 | | | |
| Grand Total | | | $ 5,990.72 * | | <Equal to Line 22(c) of Schedule I, plus $50.00 in unscheduled cell phone purchase | |
| ^Incorrectly deducted | | | *Equal to Line 44 of Form 122C-2 | | | |

As this chart shows, the above median income debtor in this case is below the Local and National Standards for expenses in several categories and above the Standards in other categories. For example, the debtor's insurance and operating expense for her home is $302.35 above the Local Standard, while her housing expense (mortgage) is $474.80 below the Local Standard (rental). The question is whether a debtor may offset expenses above the Local or National Standards in one category with expenses below the National and Local Standards in another category. And, may the Court examine individual expenses exceeding the Local or National Standards, or must it merely examine the net expense total against the total of all Local and National Standards expenses?

The debtor testified at the hearing and the Court finds her testimony credible. The debtor testified that the filed budget reflected her best estimate of her average monthly expenses. The only contradiction concerned her cell phone expense. The debtor's budget indicates she has a

6

$170.00 per month cell phone expense. She testified this was her total cost for her cell phone service for two phones with AT&T; but, she also testified that she was paying and additional $50 per month for the purchase of cell phones for her and her husband ($25.00 per phone). She mentioned the AT&T Next purchase program, which allows customers to finance phones as part of their cell phone bills by paying $25.00 per month. This $50.00 monthly payment is not reflected in the debtor's budget. The Court can only conclude that this expense is improperly bundled with some other expense in the debtor's budget, or that it is simply not listed as an expense.

The debtor and her non-debtor spouse drive two cars. The debtor drives a 2013 Ford Fusion and the debtor's spouse drives the aforementioned Ford truck. The debtor testified she drives 35,000 miles per year, and that 18,000 of those miles are related to her work. She is not reimbursed for these miles, but she deducts them on her tax return. The debtor sells life insurance and also services the policies for her existing insurance customers. Her income is commissions based, and she does not receive a mileage reimbursement for visiting her clients on sales calls or policy servicing. Based on her testimony and current IRS mileage rates, the debtor's yearly tax deduction would be approximately $9,630.00, limited to the extent it exceeds 2% of her adjusted gross income.[4] This may result in a larger than expected tax refund, but the Chapter 13 Trustee can easily monitor her tax returns during the plan to verify her ongoing transportation expenses and to determine whether to administer any tax refunds. The debtor and the Chapter 13 Trustee may seek to modify a Chapter 13 Plan if there is a change in circumstances, specifically with respect to the debtor's transportation expenses. *See* 11 U.S.C. § 1329. The debtor also testified that her husband has a roundtrip daily commute of 62 miles. The Court finds the debtor's testimony supports her transportation budget of $500.00 per month.

---

[4] See IRS Publication 529, available at www.irs.gov/publications

As noted above, the debtor's expenses on the means test are both above and below the Local and National Standards in several categories. However, the Court must point out the debtor's errors in the debtor's means test and budget. The first error occurs at line 9b of the Form 122C-2 (the means test), where the debtor fails to list the mortgage payment of $438.20 on her home. The debtor's home is community property and, whether or not she is liable on the mortgage (the debtor's testimony was unclear), that payment should be reflected at line 9b. As it will further discuss later, the Court finds this rental expense deduction in the means test inappropriate for this debtor who has a home mortgage payment and no home rental expense. The following shows these errors in the debtor's means test:



Likewise, because the mortgage payment is not listed at line 9b, the error is compounded when the mortgage payment is not repeated at line 33a. That error is illustrated below:



The errors at line 9b and line 33a, and this Court's disallowance of the deduction of the debtor's non-existent rental expense, have a direct impact on the means test calculation. Correction of these

8

errors would increase the debtor's monthly disposable income (line 45 of Form 122C-2) from $37.33 (the debtor's means test result) to $512.13.[5]

The second error occurs at line 23 of Form 122C-2, where the debtor takes an inappropriate deduction of $50.00. The Court finds no evidence the debtor is entitled to any deduction at line 23. That error is illustrated as follows:



This error impacts the calculation in Form 122C-2 and would additionally increase monthly disposable income (line 45 of Form 122C-2) by $50.00, to a total of $562.13. In total, the Court's corrections are illustrated below:

| 44. **Total adjustments.** Add lines 40 through 43. | => | $ | **5,990.72** | Copy here=> -$ | 5,990.72 |

The Court adds net from line 9(b) ($474.80) and the disallowance of line 23 ($50.00). Correct total is:

| 45. **Calculate your monthly disposable income under § 1325(b)(2).** Subtract line 44 from line 39. | | $562.13 | $ | ~~37.33~~ |

The final error is in Schedule J, where the debtor discloses a cell phone expense of $170.00 (ECF No. 20, pg. 3 of 4, line 6d). The debtor's testimony supports a cell phone expense of $220.00, which includes the purchase of two cell phones at $25.00 per month and per phone. As it will discuss later, the Court finds this expense excessive and requires the debtor to reduce it. This telephone expense appears in Schedule J as follows:

| 6. | **Utilities:** | | | |
|----|----|----|----|----|
| 6a. | Electricity, heat, natural gas | 6a. | $ | 240.00 |
| 6b. | Water, sewer, garbage collection | 6b. | $ | 88.50 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 0.00 |
| 6d. | Other. Specify: **Cell Phones** | 6d. | $ | 170.00 |
| | **Home Phone, Internet** | | $ | 86.90 |

Debtor's cell phone improperly does not include cell phone purchase of $50.00 per month/$25.00 per month for two phones.

---

[5] This is calculated as follows: the debtor's current means test result ($37.33), plus the debtor's claimed rental payment ($913.00), minus the debtor's mortgage payment ($438.20).

## CONCLUSIONS OF LAW

Some of the important issues the Court must address in this matter include the interplay between the "mechanical" calculation in the means test and confirmation of the debtor's Chapter 13 plan, the balancing of the debtor's expenses under the means test, and this Court's authority to *sua sponte* raise an objection to the debtor's budget, particularly when it concerns a specific line item expense. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), disposable income was defined in 11 U.S.C. § 1325(b)(2) as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." A debtor was then required to pay that disposable income for not less than 36 months (unless unsecured creditors were paid in full sooner), but not more than 60 months. BAPCPA changed the definition of "disposable income" and instituted a "means test" referenced in 11 U.S.C. § 1325(b)(2), which partly incorporates 11 U.S.C. § 707(b)(2). Specifically, 11 U.S.C. § 707(b)(2)(A)(ii)–(iv) describes certain monthly expenses which "shall be the debtor's applicable monthly expenses" for an above median income debtor.

Post-BAPCPA, federal courts struggled with how the changes to the Code had modified the disposable income test in Chapter 13. Some courts adopted a "mechanical" approach, and strictly calculated current monthly income (CMI) consistent with 11 U.S.C. § 101(10A). These courts did this by subtracting the expenses and other amounts allowed under 11 U.S.C. § 1325(b)(2) or (b)(3) depending on whether the debtor's CMI was greater than or less than the applicable median family income. Then, these courts "projected" the resulting "disposable income" by multiplying the calculated disposable income by the number of months in the applicable commitment period. If this "mechanical" test was applied to the debtor in this case, the

debtor would be required to pay $562.13 for 60 months, or a total of $33,727.80 to unsecured creditors.[6]  Under this mechanical test, the debtor's proposed plan, which currently only pays $9,500.00 to unsecured creditors, would not be confirmed.  Other courts have held the mechanical approach is just a "presumption" or a "starting point" in the calculation of disposable income.  These courts take a forward-looking approach, which is not restricted by the mechanical test.

Before the Supreme Court issued several opinions, the circuit courts were split on this issue.  The majority held that the mechanical approach was a "presumption" or "starting point" for disposable income.  Only one circuit used the "mechanical" test.  All of these approaches were affected by the Supreme Court's opinion in *Hamilton v. Lanning,* 130 S. Ct. 2464 (2010).  Importantly, prior to the *Lanning* decision, the Fifth Circuit used the forward-looking approach.  *See Nowlin v. Peak* (*In re Nowlin*), 576 F.3d 258 (5th Cir. 2009).  The Fifth Circuit held that "disposable income" calculated under 11 U.S.C. § 1325(b)(2), multiplied by the applicable commitment period, is "presumptively" the debtor's "projected disposable income." *Id.*  However, any party "may rebut this presumption by presenting evidence of present or reasonably certain future events that substantially change the debtor's financial situation." *Id.* at 266.  The Fifth Circuit stated the following concerning how bankruptcy judges should assess the certainty of future events for projected disposable income test purposes:

> [F]uture events must be reasonably certain or else the task of projecting disposable income may stray too far from the statutorily defined starting point. "Project[ing]" is not speculating, and must be based on known facts. Future events need not, however, be absolutely certain. . . . [A] bankruptcy court may consider reasonably certain future events when evaluating a Chapter 13 plan for confirmation under § 1325. *Id.* at 267.

Accordingly, this Court cannot speculate about the income or expenses of any Chapter 13 debtor at plan confirmation.  Instead, evidence must be submitted concerning a debtor's income

---

[6] This calculation accounts for the Court's corrections to the means test discussed earlier in the opinion.

and expenses, and the Court can then evaluate them based on the reasonable certainty of future events. However, nothing in *Nowlin* restricts this Court's ability to evaluate a debtor's income or expenses at confirmation based on the reasonable certainty of a future event.

This interpretation is consistent with the Supreme Court's holding in *Lanning*. In *Lanning*, the Supreme Court endorsed the "forward-looking" approach to determine projected disposable income. Although it was clear that the expense side of the projected disposable income calculation was not at issue before the lower court, the Supreme Court granted certiorari more broadly by stating the following:

> Petition for writ of certiorari to the United States Court of Appeals for the Tenth Circuit granted limited to the following question: Whether, in calculating the debtor's "projected disposable income" during the plan period, the bankruptcy court may consider evidence suggesting that the debtor's income or expenses during that period are likely to be different from her income or expenses during the pre-filing period. *Hamilton v. Lanning*, 558 U.S. 989, 130 S. Ct. 487 (2009).

By examining changes in income *and* expenses, the Supreme Court ultimately decided "how a bankruptcy court should calculate a debtor's 'projected disposable income.'" The Court held the following:

> [W]e hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or *expenses* that are known or virtually certain at the time of confirmation." *Id*. at 524.

There is not a lack of certainty concerning the debtor's expenses in this case. For example, the debtor's cell phone expense is certain. The debtor will continue to pay $170.00 per month for her cell phone service, plus $50.00 per month for the purchase of two cell phones until paid in full. The issue is whether the debtor can reduce this cell phone expense, and whether the Court should deny confirmation if it determines she can. This Court concludes it should deny confirmation unless the debtor reduces her cell phone expense and increases the distribution to unsecured creditors.

12

This judge was previously a Chapter 13 Trustee, and routinely evaluated cell phone expenses. Cell phone service is not a luxury; it is a reasonable necessity for any adult debtor and some teenage dependents. However, this Court has previously ruled that reasonably necessary means adequate, not "first-class." *See, e.g., In re Easley*, 72 B.R. 948 (Bankr. M.D. Tenn. 1987); *In re Kitson*, 65 B.R. 615 (Bankr. E.D.N.C. 1986); *In re Tinneberg*, 59 B.R. 634 (Bankr. E.D.N.Y. 1986). Therefore, there are instances, such as in this case, where a debtor should be required to reduce her cell phone expenses. Debtors should not have "first class" cell phone service; it is not reasonably necessary for them to have the latest and most expensive cell phones with unlimited data packages and with capabilities to interact with social media accounts. Debtors' cell phone service should be practical and inexpensive, and may include unlimited calls and texts but should not include unlimited data. Cell phone service has become ubiquitous and pricing has recently become more competitive. The Chapter 13 Trustee is in the best position to evaluate costs and cell phone budgets, and should present such evidence to the Court. Debtors should not finance the most current iPhone or Android cell phone. There are many cell phone service providers, including Boost Mobile, Consumer Cellular, Cricket, MetroPCS, Net 10, Straight Talk, TracFone, Walmart, and Virgin Mobile that provide adequate and low cost cell phone service. There is also a large secondary market in used cell phones, and the latest cell phone is often eclipsed by a newer and better model within a year or two. A used iPhone 5, which is currently four years old but fully functional, can be purchased for as little as $70.00 on eBay. Adequate cell phone service can currently be purchased for as little as $20.00 per month and a cell phone can be purchased for less than $19.99.[7] The Court is certain the debtor can reduce her $220.00 per month cell phone bill

---

[7] This Court does not endorse cell phone providers, but Cricket (www.cricketwireless.com, last visited 4/21/2017) offers a plan with unlimited calls, texts and 1GB of data for $25.00 per month. Walmart (www.walmart.com, last visited 4/24/2017) offers unlimited texts and phone calls for $24.88 per month.

(which includes the phone purchase) to approximately $40.00 per month, with an additional $40.00 in the first month of her new cell service for the purchase of two new cell phones. These amounts do not include taxes.

This reduction is necessary given the Court's evaluation of the debtor's expenses, especially as it relates to the debtor's home insurance and maintenance expenses which exceed the Local Standards by $302.35. In above median income cases, a debtor's expenses are limited in certain categories to amounts set forth in the National and Local Standards unless the Court accounts for changes in the debtor's income or expenses that are known or virtually certain at confirmation. No evidence was introduced that the home insurance and maintenance expenses should exceed the Local Standard based on the debtor's unreasonably high cell phone bill. While the home insurance and maintenance expense will still exceed the standards if the cell phone bill is reduced, that expense category would be much closer to being in compliance.

This Court adopts the view that the mechanical approach to the means test is merely a "presumption" or "starting point" in the calculation of disposable income. This Court will continue to be forward-looking with regard to income and expenses. It will not be bound by the mechanical test; instead, it will require expense be known or virtually certain at confirmation if those expenses exceed the Local or National Standards.

---

Tracfone (www.tracfone.com, last visited 4/24/2017) offers 300 minutes of calls, 1000 texts and 1GB of data for $20.00 per month. Boost Mobile (www.boostmobile.com, last visited 4/27/2017) offers a plan with unlimited talk, text and 2GB of data for $30.00 per month. Net 10 (www.net10.com, last visited 4/27/2017) offers a plan with 30 days of unlimited talk, text and data for $35.00 per month. MetroPCS (www.metropcs.com, last visited 4/27/2017) offers 2 lines for $50.00, which includes taxes and fees for unlimited talk, text and 2GB of data and each additional line is only $25.00 again including tax and 2GB of data. Virgin Mobile (www.virginmobileusa.com, last visited 4/27/2017) offers unlimited talk, text and 5GB of data for $35.00 per month. Most websites have cell phones available for purchase for less than $20.00. In certain instances, reconditioned phones are offered free with cell phone service.

Additionally, this Court will not allow the debtor to balance expenses exceeding the National or Local Standards against her claimed rent expense. At line 9c of the means test, the debtor incorrectly takes a Local Standard deduction of $913.00 for rent. In reality, the debtor has no rental expense; instead, she has a monthly mortgage payment of $438.20. In *Ransom v. FIA Card Servs., N.A.,* 131 S. Ct. 716 (2011), the Supreme Court held that a debtor who owns his car outright may not claim an allowance for car ownership costs in his means test. The debtor in that case claimed the means test expense even though he did not actually incur the expense. In effect, the Supreme Court held that a debtor may not deduct "phantom" expenses in the means test. The Court stated the following:

> [a] debtor may claim not all, but only "applicable" expense amounts listed in the Standards." So whether a debtor can claim any Standard expense, either Local or National turns on whether or not the expense is applicable to the debtor. *Id*.

In *Ransom*, the Court concluded that a person cannot claim an allowance for vehicle ownership costs unless he has some expense falling within that category. The *Ransom* court stated the following:

> Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like "[Car] Ownership Costs") if, but only if, that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table--that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to "the debtor's applicable monthly expense amounts," § 707(b)(2)(A)(ii)(I)" *Id*. at 69-70.

Based on the reasoning in *Ransom*, this Court holds that a home rental expense is not "applicable" to a debtor who will not incur any such rental costs during the case. Because the home rental expense category covers rental of a home, and because the debtor finances her home without any rental expense, she may not claim any home rental allowance in the Chapter 13 means test. In short, the debtor may not deduct a home rental expense when she does not have such

expense. She may only claim her actual mortgage payment, which is less than the rental expense allowance, and she may not balance her expenses that are higher than either the Local or National Standards against any Local Standard deficiencies.

At first glance, the holding in *Ransom* may appear to support the balancing of Local and National Standard expenses that are above the amounts allowed by the Chapter 13 means test against amounts that are below these standards. The Supreme Court stated that "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id* at 70-71. It is unclear whether this qualification is for the total amount allowed by the means test in the relevant category or just the actual expense incurred by the debtor in that category. However, the opinion in *Ransom* goes further and states the following:

> The Collection Financial Standards--the IRS's explanatory guidelines to the National and Local Standards--explicitly recognize this distinction between ownership and operating costs, making clear that individuals who have a car but make no loan or lease payments may claim only the operating allowance. App. to Brief for Respondent 3a; see supra, at 66-67, 178 L. Ed. 2d, at 609. Although the statute does not incorporate the IRS's guidelines, *courts may consult this material in interpreting the National and Local Standards*; after all, the IRS uses those tables for a similar purpose--to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments. [emphasis supplied] *Id* at 72-73

This Court, after consulting the Collection Financial Standards notes that the IRS Collection Standards for an automobile's Operating Costs[8] provides that a taxpayer is allowed operating costs as allowed by the Local Standard or the amount actually spent for operating costs, whichever is

---

[8] The IRS Collection Financial Standards are available at the IRS's website at www.irs.gov.

*less*.  This supports the position that a debtor may not net excess means test expenses against expenses that are contained in the Local Standard by claiming an expense amount below the Local Standard.  Instead, a debtor is allowed a deduction for the Local Standard amount or the amount actually spent, whichever is *less*, so no netting of these expenses can be allowed.

Still further, the IRS Collection Financial Standards states the following:

Collection Financial Standards are used to help determine a taxpayer's ability to pay a delinquent tax liability.  Allowable living expenses include those expenses that meet the necessary expense test. The necessary expense test is defined as expenses that are necessary to provide for a taxpayer's (and his or her family's) health and welfare and/or production of income.

National Standards for food, clothing and other items apply nationwide. Taxpayers are allowed the total National Standards amount monthly for their family size, *without questioning the amount actually spent*.

National Standards have also been established for minimum allowances for out-of-pocket health care expenses. Taxpayers and their dependents are allowed the standard amount monthly on a per person basis, *without questioning the amount actually spent.*

Maximum allowances for monthly housing and utilities and transportation, known as the Local Standards, vary by location. In most cases, the taxpayer is allowed the amount actually spent, or the local standard, *whichever is less.*

Generally, the total number of persons allowed for necessary living expenses should be the same as those allowed as exemptions on the taxpayer's most recent year income tax return.

If the IRS determines that the facts and circumstances of a taxpayer's situation indicate that using the standards is inadequate to provide for basic living expenses, we may allow for actual expenses. However, taxpayers must provide documentation that supports a determination that using national and local expense standards leaves them an inadequate means of providing for basic living expenses [emphasis supplied]." www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (last visited 5/9/2017).

These standards create a dichotomy for National and Local Standard expenses, allowing the netting of expenses in one category (the National Standard expenses) but not against another (the Local

17

Standard expenses).  Because a debtor is allowed the National Standard expenses without regard to the actual amount the debtor spends, the offsetting of the debtor's other expenses against the National Standards in the means test is allowed.  However, for expenses that are defined by the Local Standards, the debtor is only allowed the amount actually spent or the Local Standard, whichever is less.  Therefore, netting of expenses against a Local Standard when claiming a lesser amount is not allowed.  Therefore, this Court holds that a debtor may not net her higher expenses in any other expense categories against any claimed Local Standard expense that is below the standard, but may offset excess expenses against any National Standards expenses that are below the standard.

This Court recognizes that post-*Ransom*, bankruptcy courts have come to different conclusions when considering the issue of whether an above median income debtor may claim the full amount of the deductions under the IRS's National and Local Standards when the debtor has expenses which are lower than the amounts listed in the Standards.  *See, e.g.*, *In re Daniel*, 2012 WL 3322438 at *2 (Bankr. M.D. Ala. 2012) (finding that debtors shall deduct the lesser of the IRS Local Standard allowance or their actual costs); *In re O'Neill Miranda*, 449 B.R. 182, 196 (Bankr. D.P.R. 2011) (finding that debtors "pursuant to Section 707(b)(2)(A)(ii)(I) may deduct the full amount of applicable expenses under the IRS's National and Local Standards if they provide evidence to the [t]rustee that they have some expense for that particular category, irrespective of the fact that their actual expenses for certain categories are lower"); *In re Harris,* 522 B.R. 804 (Bankr. E.D. NC. 2014) ([t]he Court agrees with the *Daniel* decision of the Bankruptcy Court for the Middle District of Alabama…[t]he Supreme Court could not have intended that debtors with a nominal ownership expense be entitled to claim the entire allowance while debtors with no ownership expense be entitled to claim nothing).

18

Therefore, this Court expressly rejects those opinions that allow a debtor to deduct the full amount of applicable expenses under the IRS's Local Standards if they provide evidence to the Trustee that they have some expense for that particular category, irrespective of the fact that their actual expenses for certain categories are lower. Likewise, the Court endorses those opinions that find that a debtor shall deduct the lesser of the IRS Local Standard allowance or their actual costs.

Irrespective of this holding, if the Court assumes that the debtor can net her expenses that are higher than the Local and National Standards against her lower expenses without exception, this would still not favor the debtor or support plan confirmation given the errors in the debtor's means test. The debtor's income deductions exceed the deductions allowed in the means test by $63.39; her housing insurance and operating expenses exceed the Local Standard for such expense by $302.35; her transportation operating expenses exceed the Local Standard by $347.97; and her life insurance expense exceeds the allowed deduction in the means test by $67.16.[9] In total, the debtor's expenses exceed the Local and National Standards and amounts allowed by the means test by a total of $786.87, while her expenses below the Local and National Standards, including the previously disallowed home rental expense, total only $436.44. Even if the Court were to net all the allowed expenses in the means test and the Local and National Standards, the debtor's proposed expenses would exceed the means test net allowance by $350.43. So, even a mechanical calculation allowing the debtor to net expenses in both the Local and National Standards would require a $21,025.80[10] distribution to unsecured creditors; yet, the debtor's plan proposes a payout of only $9,500.00 to unsecured creditors. Therefore, the plan cannot be confirmed.

---

[9] The debtor for reasons unknown to the Court did not deduct all of her life insurance expenses in the means test.

[10] The Court assumes that, after the debtors allowed expenses, $350.43 per month would be available for unsecured creditors for the required Chapter 13 plan term of 60 months.

To clarify, an above median income debtor should only deduct expenses in the means test that are applicable as of the date of plan confirmation. The maximum allowed deduction is either (a) the National Standard or (b) the Local Standard limited by the amount actually spent by the debtor, whichever is *less*. The Local and National Standards are a baseline for applicable expenses, and these expenses should only be exceeded when a debtor's expenses are known or virtually certain to exceed the standards at the time of confirmation. However, a debtor should be required to adhere to the Local and National Standards when a reasonable change, such as changing cell phone providers, could bring a debtor into compliance. This Court holds that an above median income debtor should be required to make reasonable accommodations during the life of the Chapter 13 plan concerning expenses above the Local and National Standard amounts. The Court stresses that this is not limited to cell phone service. There are many other expenses that can be reduced in a debtor's budget, in either the short or intermediate term, to bring the above median debtor into compliance with the Local and National Standards. Any reasonable change or accommodation to a debtor's expenses that allow an above median income debtor's expenses to fall below or at the Local and National Standards can be considered by the Chapter 13 Trustee and the Court. This would include, but is not limited to, the following: elimination of home phone service when all parties in a debtor's household have cell phones, and elimination of all but basic cable and basic internet service, or the total elimination of basic cable if broadcast channels are available. Intermediate term changes could require the debtor to drive smaller, less expensive cars to reduce transportation and insurance costs.[11] The Court feels compelled to enforce the provisions

---

[11] The debtor's non-filing spouse drives 62 miles round trip on work days in a 2012 Ford Truck, which substantially increases the transportation expenses in this case. While the Court would not order a non-filing spouse with sufficient income to pay this transportation expense to reduce his automobile expenses, such reduction would not be without consideration by the Court for a debtor whose transportation expenses exceed the Local Standard by the amount in the debtor's budget. *See* 11 U.S.C. § 101(10A)(B).

on the expense side of the means test on this debtor's budget, specifically the expenses allowed in the means test by 11 U.S.C § 707(b)(2)(A)(ii)–(iv).  The debtor must come as close as possible to the Local or National Standards required by the Bankruptcy Code so that her expenses "shall be the debtor's applicable monthly expenses."  11 U.S.C. § 707(b)(2)(A)(ii).

Also at issue in this case is the Court's ability to raise concerns regarding confirmation *sua sponte*.  The Court notes there has been no objection from any party to the plan and budget filed by the debtor in this case.  This Court has a history of raising concerns and objections *sua sponte*, especially regarding debtors' budgets.  Some issues involve errors made by the Chapter 13 Trustee in recommending confirmation and others are directly related to a debtor's disposable income.[12]

---

[12]For examples of cases where the Court has raised *sua sponte* objections to confirmation or modification see the following: *Bamford*, 14-10318: the debtor has a large 401(k) loan ($393.71 per month) that was not in the original budget. The modified plan indicates the debtor took out the loan to pay for the cost of relocating. However, there is nothing on the docket indicating the debtors ever asked for permission to take out this loan. *Walpool*, 16-11646: the debtors' plan calls for retention of a timeshare which is inadequately disclosed in the debtors' schedules, i.e. not correctly scheduled as an interest in real estate, generically described as "timeshare" with no further description. The debtor's ongoing expenses likewise include the payment of homeowner's association (HOA) fees for the timeshare (via the plan) as well as a maintenance contract on the timeshare (via the budget). There also appears to be no ongoing budget allowance for the ongoing HOA fees. The debtors in the instant matter are below median income. These debtors are permitted to deduct amounts reasonable and necessary for their maintenance or support or the maintenance and support of a dependent. These expenses may therefore violate both the disposable income test as well as the requirement of good faith. The Court additionally notes that Section 3.2 of the plan includes proposed treatment of the HOA dues. However, that section of the plan only applies to secured claims on personal property. *Madrigal*, 13-10798: it is not clear what the purpose of this modification is. ECF #90 reflects "Debtor is modifying his chapter 13 plan to reflect the post-petition arrears remaining to be be [sic] paid the trustee in section II(B)(4)(b)in order to cure the trustee's objection." This is not proper grounds for a Chapter 13 plan modification. *Robinson*, 13-12347: based on the amended I and J, the debtor has taken out a 401(k) loan since the filing of the case without permission. Additionally is not clear when the loan will be paid in full. *Roberson*, 15-12036: there is a new payroll deduction on the debtor's amended Schedule I for "Advance" of $498.33/month. This was not on the debtor's original Schedule I, and the Court is unable to determine its appropriateness. *Miner*, 16-10441: hearing required for appropriateness of debtor's 401k contribution.  Debtor's retirement contribution and 401k loan repayment calculate to 18% of his gross income. *Tippins*, 16-10973: Section 3.1.a of the Chapter 13 plan provides for provides for pre and post-petition mortgage arrears.  The plan appears to conflict with the order at docket #32 requiring the debtor's mortgage payments to resume 10/1/2016. *Harrison*, 16-10950: Schedule J expenses for food, housekeeping supplies, clothing, and personal care products exactly match the National or Local Standards. *Allen*, 16-

Some may consider this Court's raising *sua sponte* objections to a Chapter 13 plan inappropriate, especially when no parties have filed an objection. Retired Bankruptcy Judge Keith Lundin, a well-respected expert on Chapter 13 issues and co-author of Chapter 13 Bankruptcy, 4th Edition, humorously calls such objections a "sewer sponte epidemic." www.lundinonchapter13.com *(Season 1, Episode 10)*. He and his buddy "CK",[13] have made a one-sided[14] argument that Judges hear cases and controversies and should not raise issues *sua sponte* when no parties have objected to the confirmation of a plan. Judge Lundin served a long and illustrious career on the Bankruptcy Court in Tennessee. This Court is loath to disagree with him, but it must.

---

11869: the Court is confused by the amended plan. Original plan called for payment of a secured claim but amended plan does not, however, amended plan does not provide for surrender of collateral. 16-12106, *Prier*, debtor is paying $200.00 per month for 36 months, a total of $7200 to pay off a $500 television. *Paillett*, 16-12002: the Court is confused by the budgets at ECF #17 and #19, as well as excessive expenses. Debtor is ordered to appear. *McCary*, 16-12016: there is a pending creditor objection at docket #17. Objection may be withdrawn and the Trustee may recommend confirmation, otherwise set for hearing 9:30 a.m. on March 1, 2017. *Carter*, 16-12066: hearing required as the debtor is contributing $65/month to "stock purchase" in addition to a voluntary retirement contribution. *Walker*, 16-10321: the Court has concerns that the plan conforms to § 1322(b)(2). Generally maintenance of payments in § 1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the mortgage contract during the plan. Debtor(s) are excused from attendance. *Garcia*, 16-11083: the debtor's budget (ECF #17) indicates $844.95 in child care and education costs but the schedules (ECF #1) indicate there may be an unemployed parent at home. *Hamiter*, 16-11922: the joint-debtor has a payroll deduction of $67.22 per month described as "Other-N." The Court cannot discern this deduction. Debtor is excused from attendance unless required as a fact witness. Trustee may recommend confirmation in advance of the hearing should the deduction be clarified by an amended budget or support document. *Wilkerson*, 16-10403: the debtors' Amended Motion to Modify Plan is set for hearing at 9:30 a.m. on April 26, 2017. This plan was originally confirmed less than a year ago. Certain expenses in the new budget have increased without explanation (e.g., food/housekeeping increased about $200, utilities increased by about $340, and personal care products increased by about $110). The debtors' monthly expenses have increased by a total of $1,158 since plan confirmation. The debtors are now above allowed expenses (either Local or National) as set forth in the means test.

[13] "CK" is shorthand for Cardboard Keith, which is life-size cardboard cutout of Retired Judge Keith Lundin that he dresses in his video programs for satirical effect.
[14] One sided because CK is flat.

It is Judge Lundin's opinion that a bankruptcy judge should not raise objections to a Chapter 13 plan when no parties have filed an objection. He suggests that the bankruptcy court should not interject itself into a bankruptcy case and raise issues which others have not, and that courts are overreaching under the Supreme Court's opinion in *United Student Aid Funds, Inc. v. Espinosa*, 553 F.3d 1193 (2008). He also states that judges rule on cases and controversies. Therefore, bankruptcy judges should be reactive; that is, they should respond only to objections of parties. According to this theory, judges should not be proactive, and independently review cases and object. He indicates that debtor's counsel and the trustee do not know with whom they are litigating against if the Court conducts raises *sua sponte* objections. He further adds that such objections reflect a recent change in judicial philosophy, especially with newer judges. This Court, however, concludes that the enactment of BAPCPA, which requires that "debtors who can pay creditors do pay them" and that "debtors will repay creditors the maximum they can afford," together with the Supreme Court's ruling in *Espinosa*, has changed the landscape of the consumer bankruptcy practice.

A Chapter 13 plan may not be confirmed unless it passes the disposable income test. 11 U.S.C. § 1325(b)(1). Basically, a Chapter 13 debtor must either pay a claim in full (11 U.S.C. § 1325(b)(1)(A)) or commit his disposable income for the applicable commitment period (11 U.S.C. § 1325(b)(1)(B). Judge Lundin's opinion concerning *sua sponte* objections based on disposable income has support in in 11 U.S.C. § 1325(b)(1), which provides "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan." Some consider this a restriction on the court's ability to raise a disposable income objection. The Court is obviously not the trustee or an unsecured claim holder. Some courts sidestep this provision under the theory that the good faith requirement in 11 U.S.C. § 1325(a)(3)

16-12298 - #29 File 05/15/17 Enter 05/16/17 08:11:19 Main Document Pg 23 of 28

also allows it to raise a disposable income objection *sua sponte*. A Chapter 13 treatise, which Judge Lundin co-authors, says the following about this theory:

> Anarchy in the projected disposable income cases has perversely inspired many bankruptcy courts to rejuvenate the good-faith test in § 1325(a)(3) as a platform for measurement of the economic effort required of Chapter 13 debtors at confirmation. It is sometimes hard to tell from the decisions whether economic components of good faith have become a separate test for confirmation or whether "good faith" has become leavening within the process of interpreting and applying the projected disposable income test in § 1325(b)." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 496.2, at ¶ 6, Sec. Rev. Apr. 21, 2010, www.Ch13online.com.

This Court disagrees with Judge Lundin's assertions and takes the position that it can raise disposable income objections *sua sponte* based on good faith. This Court's reasoning is noted below in order of importance:

(a.) This Court cannot read the Supreme Court's ruling in *Espinosa* and reach any other conclusion other than that it has an independent duty to review all budgets and Chapter 13 plans. The Court has a duty to raise objections to confirmation based on its independent review even in the absence of objection from any party in interest. Many would argue that *Espinosa* is dicta and not binding. While the Court understands this argument, it will not ignore the plain language in the Supreme Court's opinion. The Court is bound by the holding in *Espinosa*.

(b.) BAPCPA was enacted to correct perceived abuses in the bankruptcy system. The Supreme Court stated the following in *Ransom*:

> Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P. A. v. United States*, 559 U.S. 229, 231-232, 130 S. Ct. 1324, 176 L. Ed. 2d 79, 84 (2010). In particular, Congress adopted the means test--"[t]he heart of [BAPCPA's] consumer bankruptcy reforms," H. R. Rep. No. 109-31, pt. 1, p. 2 (2005) (hereinafter H. R. Rep.), and the home of the statutory language at issue here--to help ensure that debtors who can pay creditors do pay them. See, e.g.,ibid. (under BAPCPA, "debtors [will] repay creditors the maximum they can afford")." *Id*. at 64

24

The *sua sponte* objections this Court raises generally can be classified into two distinct categories noted below. Some have no effect on a debtor's plan payment. However, all objections concerning disposable income are raised so that a debtor will increase his payments and pay the maximum he can afford as required by BAPCPA and *Ransom*.

The first kind of objections involve errors by the Chapter 13 Trustee in recommending confirmation, and generally do not affect a debtor's plan payment or disposable income. These are generally simple oversights in the debtor's budget or plan for which the Court finds little fault. These can include miscalculations, incorrect interest rates, transposing errors, improperly allowed payroll deductions, incorrect confirmation orders, improper attorney fee payments and duplicative or omitted secured creditor repayments. The correction of these errors generally leads to an amended budget or Chapter 13 plan and perhaps an increased distribution to unsecured creditors. These Court raised objections are primarily due to the Court's concerns regarding the binding effect of plan confirmation. The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan but only if notice is adequate. Bad plans, bad notices and bad confirmation orders that fall short of the due process required in the Code and Rules are the principal limitations on the effects of confirmation in Chapter 13 cases.

The Chapter 13 Trustee in this division administers over 6,500 cases, and he cannot be perfect in every aspect. He employs a large staff and, while the Court has expectations that he will engage in quality control, no single person on the Trustee's staff is perfect. Errors will occur as the Trustee and his staff review cases and make confirmation recommendations. Even if the Trustee makes confirmation recommendation errors in only 3% of all cases, the Court will see as many as eight cases per month with either budget or plan errors. When caught by the Court, these

errors are properly brought to the attention of the debtor, debtor's counsel and the Chapter 13 Trustee. The Court finds nothing in the Code or Bankruptcy Rules that does not allow it to bring these errors to the attention of all involved. Correction of these errors may increase the distribution to unsecured creditors as well as eliminate future errors of the same type. Additionally, they insure that the confirmed Chapter 13 plan has a binding effect on debtors and creditors.

The second category of objections does not involve an oversight or omission in the debtor's budget, Chapter 13 plan or confirmation order. These objections are directly related to this case and to a debtor's disposable income. These objections, such as the Court's objection in this case, involve a subjective disagreement between this Court and the Chapter 13 Trustee regarding a debtor's expenses. As already noted, the Trustee did not originally object to the debtor's plan or budget. In fact, the Trustee again recommended confirmation following the hearing. The Court can only conclude that the Trustee had no objections to the debtor's budget. If 11 U.S.C. 1325(b)(1) controls and only the trustee or the holder of an allowed unsecured claim may object to the debtor's plan based on disposable income, then this Court's objection in this case should not be allowed. This Court rejects that argument if only for the logical inference that in the absence the Court's ability to express its opinion by objection as to a debtor's expense levels, then the Court would be frozen out of this important process. This can be rationally justified either by the Supreme Court's holding in *Espinosa* or based on the plan not being proposed in good faith. The Court stresses that not allowing this Court to object to a debtor's expense levels, especially in this division where unsecured creditor involvement in Chapter 13 cases other than filing proofs of claims is so minimal as to be microscopic, would effectively make the Chapter 13 Trustee the final arbiter of all Chapter 13 expense levels for all Chapter 13 debtors. This Court feels duty bound not to abrogate that duty solely to the Chapter 13 Trustee.

The Court also notes that the Chapter 13 Trustee in Shreveport, Todd Johns, was appointed on October 1, 2016 (about nine months ago). The position of a Chapter 13 Trustee is somewhat unique as it requires the legal and administrative experience to shepherd Chapter 13 cases from start to end. While almost all Chapter 13 Trustees have a level of Chapter 13 experience prior to appointment, they often have no experience as an actual Chapter 13 Trustee. Once appointed, trustees typically do not move; therefore, they almost exclusively come to a job for which they may be well qualified but have little actual experience. Like Mr. Johns, they often inherit an office they did not create, with staff they did not hire, and computer software they are unfamiliar with. Therefore, there will always be a transition period as a new trustee trains and adapts to his new surroundings, personnel, and technology. Accordingly, the Court must note its limited history with the current Chapter 13 Trustee and its limited ability to provide feedback regarding issues of disposable income in in an adversarial context. Without an ability to raise *sua sponte* disposable income objections, the Trustee would have no way of knowing the Court's position.

(c.) Finally, this Court does not see itself as simply a confirmation order signing machine. In the Shreveport Division, where typically over 70% of all cases filed are Chapter 13 and a clear majority of the hearings scheduled weekly involve uncontested Chapter 13 matters, this Court does not believe it should avoid the Supreme Court's ruling in *Espinosa* and simply sign every confirmation order on every case that is recommended for confirmation by the Chapter 13 Trustee. While not reviewing cases and raising *sua sponte* objections would make the Court's job much easier by removing the often tedious and repetitive task of reviewing Chapter 13 Plans and budgets, it would be contrary to this Court's duty to review Chapter 13 plans under *Espinosa.* This Court simply will not agree to blindly sign every confirmation order.

In conclusion, the Court must again highlight and stress what it believes to be Supreme Court precedent from *Espinosa* and *Ransom*. A Court should independently review all budgets and Chapter 13 plans and ensure that debtors will repay creditors the maximum they can afford. For these reasons, the Court will deny confirmation of the debtor's Chapter 13 plan and require the debtor to increase her distribution to unsecured creditors in conformity with this opinion.

**ACCORDINGLY, IT IS ORDERED** that confirmation of the debtor's amended Chapter 13 plan is denied.

**IT IS FURTHER ORDERED** that the debtor shall file an amended Chapter 13 budget and plan within 14 days of date of the entry of this order.

**IT IS FURTHER ORDERED** that, should the debtor fail file an amended budget and plan, convert the case to Chapter 7, or file a voluntary motion to dismiss, the Chapter 13 Trustee may upload an order of dismissal without prejudice.

### ###